UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OREGON MUTUAL INSURANCE COMPANY,

            Plaintiff,

v.

HIGHLAND COURT LLC, et al.,

            Defendants.

CASE NO. C08-394JLR

ORDER

This matter comes before the court on Plaintiff Oregon Mutual Insurance Company's ("Oregon Mutual") motion for summary judgment (Dkt. # 17). Having reviewed the papers submitted by the parties and heard the argument of counsel, for the reasons that follow, the court GRANTS in part and DENIES in part the motion for summary judgment.

## I. BACKGROUND

In 1994 Defendant Highland Court Limited Partnership ("HCLP") purchased the Highland Court apartments located at 1216 1st Avenue West, Seattle, Washington. (Declaration of Michael O. Strand ("Strand Decl.") (Dkt. # 23) ¶¶ 2-3.) On December 13, 2001, HCLP conveyed the building to Highland Court LLC ("HCLLC"). (Strand Decl. ¶ 3.) From when the building was purchased in 1994 until July 31, 2004, when the

ORDER – 1

last lease terminated and the tenants vacated, the building was rented out as apartments. (Strand Decl. ¶¶ 4-5, 7.)

After the tenants vacated, HCLLC began converting the apartments into condominiums. (Strand Decl. ¶ 8.) In October 2005, HCLLC recorded the Declaration for the Highland Court Condominiums - Queen Anne. (*See* Declaration of Lawrence Gottlieb ("Gottlieb Decl.") (Dkt. # 19), Ex. B.) Ten of the condominiums were sold on October 10, 2005. (*See* Gottlieb Decl., Ex. C.) The remaining three condominiums were sold on November 18 and 21, 2005. (*Id.*)

On October 15, 2007, HCLLC received a statutory notice of defects from the Highland Court Owner's Association ("Owner's Association"). (*See* Declaration of Emanuel F. Jacobowitz ("Jacobowitz Decl.") (Dkt. # 22), Ex. 3.) The notice alleged defects in and damage to windows, exterior masonry walls, ceilings and skylights as well as water damage caused by the aforementioned defects. (*See id.*) On February 11, 2008, the Owner's Association filed suit in King County Superior Court ("Underlying Lawsuit") against HCLP, HCLLC and several individuals who had been partners in HCLP and members of HCLLC. (*See* Gottlieb Decl., Ex. E.) In their complaint in the Underlying Lawsuit the Owner's Association states that "[t]he premises which are the subject of these claims are the damaged and defective Common Elements, none of which are believed ever to have been rented out by any Defendant. Under the Highland Court Declaration, the living spaces inside the unit which *were* leased prior to conversion, are not part of the premises that are the subject of this action (the Common Elements)." (*See id.*)

From February 24, 2001 to November 16, 2005, Oregon Mutual insured under a Commercial General Liability policy first HCLP and then HCLLC. (*See* Gottlieb Decl., Ex. D.) The Defendants in this lawsuit tendered the notice of defects and Underlying

ORDER – 2

Lawsuit to Oregon Mutual which agreed to provide a defense. Oregon Mutual then commenced this action seeking a declaration that it has no obligation to defend or indemnify the Defendants in the Underlying Lawsuit. (*See* Compl. (Dkt. # 1) ¶ 6.1.) At issue in this motion is whether certain policy exclusions act to exclude coverage for the claims for property damage alleged in the Underlying Lawsuit.

## II. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

Interpretation of an insurance contract is a question of law. *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005). Insurance policies are construed as contracts. *Id.* The policy is considered as a whole and it is given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id.* "[I]f the policy language is clear and unambiguous, [the court] must enforce it as written; [the court] may not modify it or create ambiguity where none exists." *Id.* A clause is ambiguous only "when, on its face it is fairly susceptible to two different interpretations, both of which are reasonable." *Id.* If a clause is ambiguous the court may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity. *Id.* If an ambiguity remains after examination of the extrinsic evidence the ambiguity is

ORDER – 3

resolved against the insurer and in favor of the insured. *Id.* With regard to exclusions, the Washington Supreme Court instructs that "while exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Id.*

**A.    Owned Property Exclusion**

Oregon Mutual argues that it has no duty to defend the Defendants in the Underlying Lawsuit because the Owned Property Exclusion bars coverage. Within the exclusions section under the heading "Damage To Property" the policy states that it does not cover: "'Property damage' to: (1) Property you own, rent, or occupy . . . ." (Jacobowitz Decl., Ex. 1.) The Defendants' response is two-fold, they contend first that the Owned Property Exclusion is not applicable to the individual Defendants because the exclusion limits itself to "property damage" claims against "you," where the definition of "you" does not include any of the individual Defendants. Their second argument is that the Underlying Lawsuit alleges "property damage" occurring to property while that property was not owned by an insured and so the Owned Property Exclusion does not apply.

**1.    Individual Defendants**

In making their first argument, the Defendants contend that the individual Defendants (as opposed to the institutional Defendants, HCLLC and HCLP), the former partners in HCLP and members of HCLLC, are not encompassed within the definition of "you" in the policy and therefore, the Owned Property Exclusion cannot act as a bar to coverage for the claims asserted against them in the Underlying Lawsuit. The policy provides: "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy . . . The word 'insured' means any person or organization

ORDER – 4

qualifying as such under Section II - Who Is An Insured." (Jacobowitz Decl., Ex. 1.) Section II - Who Is An Insured provides in relevant part: "If you are designated in the Declarations as: . . . A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers." (*Id.*) The Named Insureds under the policies were HCLP and HCLLC.

Oregon Mutual responds that the issue is much more simple than Defendants claim.[1] It argues that looking at the plain language of the exclusion that it excludes coverage for damage to any property owned by HCLP and HCLLC regardless of who is sued for "property damage" to HCLP or HCLLC's property in the Underlying Lawsuit. The court agrees and rejects Defendants' attempt to create ambiguity where none exists.

Here, it is true that "you" in the exclusion refers to HCLP or HCLLC; however, that does not mean that the exclusion does not apply to the individual Defendants. It is clear from the policy language that coverage for "property damage" does not extend to property owned by the Named Insured, here HCLP and HCLLC. The policy provides: "This insurance does not apply to . . . Property [the Named Insured] own[s], rent[s], or [occup]ies." (Jacobowitz Decl., Ex. 1.) There is no room left in this statement for the interpretation that other insureds could expect coverage for "property damage" arising out of property owned by the Named Insured. The exclusion therefore applies to any of the

---

[1] In support of their argument, Defendants cite a California case, *Smith Kandal Real Estate v. Cont'l Cas. Co.*, 79 Cal. Rptr. 2d 52, 56-58 (Cal. Ct. App. 1998) where the court found, in a different insurance policy, that the definition of "you" was ambiguous and construed the policy in favor of coverage for the insureds. In that case, however, the term "you" included the partners who were seeking coverage, whereas here, the definition of "you" clearly excludes the individual Defendants. *See id.* at 54. Where the policy definition of "you" included more than one person it certainly could be confusing as to how the insureds were supposed to determine how the exclusion was to be applied. Here, where it is clear that coverage is being excluded for claims arising from "property damage" to the Named Insured's property, no ambiguity is present.

ORDER – 5

insureds who are sued for "property damage" arising out of property owned by the Named Insured.

Third party insurance, like the Comprehensive General Liability policy at issue here, provides protection for the policyholder for liability it incurs to someone else, while first party insurance provides for protection for losses to the policyholder's own property. *See State Farm Fire & Cas. Co v. English Cove Ass'n, Inc.*, 88 P.3d 986, 992 (Wash. Ct. App. 2004). The Owned Property Exclusion here prevents the policy from providing first-party benefits to any insured by barring coverage to the extent that the loss occurs to the Named Insured's property. "There are no first party benefits under a policy with an [owned property] exclusion." *Id.* Adopting the meaning urged by the Defendants would be contrary to these principles. Defendants' proffered interpretation would result in a strained or forced construction, something which would be contrary to Washington law and, as stated above, the court declines to read ambiguity into a provision where none exists. *See Quadrant Corp.*, 110 P.3d at 737.

### 2    **Institutional Defendants**

It is not disputed that during HCLP's policy period that it owned the premises at issue in the Underlying Lawsuit. It does not appear that HCLP contests the application of the Owned Property Exclusion to preclude coverage for claims alleging "property damage" against it. The court therefore determines that there is no genuine issue of material fact regarding whether the Owned Property Exclusion precludes coverage for claims against HCLP and the associated individual Defendants arising from "property damage."

The question regarding coverage for HCLLC and its associated members is more interesting. The Defendants argue that because the Underlying Lawsuit alleges "property damage" occurring to property while that property was not owned by an insured that the

ORDER – 6

Owned Property Exclusion does not apply. It is not disputed that during the majority of the policy period, HCLLC owned the property at issue in the Underlying Lawsuit. However, on October 10, 2005, it sold ten of the thirteen condominiums to third-parties, retaining an interest in the remaining three condominiums and associated portion of the common areas until the end of the policy period on November 16, 2005.

In support of their arguments, both parties cite to the Washington Court of Appeals decision in *English Cove*. In that case the insurer filed suit seeking a declaration that an owned property exclusion clause barred coverage where the insured owned some, but not all, of the condominium units in a condominium complex. 88 P.3d at 988. One of the questions before the court was whether the insured still owned some portion of the shared elements of the condominium complex. The court held that the insured owned the common elements of the condominium "as the holder of an undivided interest in them." *Id.* Coverage was held to be barred to the extent of the insured's ownership interest in the damaged common elements of the condominium. *Id.* at 992.

The court determines, under the policy at issue and the holding in *English Cove*, that there is no material question of fact that coverage is precluded for HCLLC and the associated individual Defendants under each policy as to the three units and corresponding portion of the common areas that it owned during the entire policy period; however, as to the portion of the units and portion of the common area that it did not own between October 10, 2005 and November 16, 2005, the Owned Property Exclusion does not bar coverage for HCLLC and the associated individual Defendants.

**B.     Alienated Property Exclusion**

The policy also contains an alienated property exclusion. Within the exclusions section under the heading "Damage To Property" the policy states that it does not cover "property damage" to "[p]remises you sell, give away or abandon, if the 'property

ORDER – 7

damage' arises out of any part of those premises . . . ." (Jacobowitz Decl., Ex. 1.) The policy also provides that the Alienated Property Exclusion "does not apply if the premises are 'your work' and were never occupied, rented or held for rental by you." (*Id*.) The policy defines "your work" as: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations" and includes "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work,' and (2) The providing of or failure to provide warnings or instructions." (*Id.*)

Oregon Mutual argues that the Alienated Property Exclusion bars coverage for any remaining claims in the Underlying Lawsuit because "HCLP and then HCLLC held for rental and then sold Highland Court." (Mot. at 12.) The Defendants respond that first, the Alienated Property Exclusion cannot apply to any of the individual Defendants because they are not encompassed within the definition of "you" as used in the exclusion; second, the Underlying Lawsuit alleges "property damage" to premises that had not been sold by the end of the coverage period and therefore the Alienated Property Exclusion is not applicable; and third, the Underlying Lawsuit alleges "property damage" to parts of the insured premises that were never rented or held for rental by any insured.

### 1. Individual Insureds

As discussed above, the court rejects the Defendants' arguments with respect to the use of the word "you" in the exclusions. The court is not persuaded that the Alienated Property Exclusion cannot apply to any of the individual Defendants because they are not encompassed within the definition of "you" in the exclusion. In fact, because the individual Defendants are not included in the definition of "you," the policy is clear that coverage is excluded for premises owned and then sold by the Named Insured. Here, the language of the exclusion excludes coverage for any insured for

ORDER – 8

property sold by HCLLC during the policy period. Therefore, Defendants' first argument fails.

### 2. "Premises"

The Defendants next argue that the Alienated Property Exclusion's reference to "premises" is intended to refer to the "premises" as described in the policy and that because the entirety of the "premises" was not sold during the policy period that the exclusion does not apply. Oregon Mutual responds that it seeks only to apply the Alienated Property Exclusion to the ten units that HCLLC sold on October 12, 2005. It concedes that the exclusion would not apply to the three condominiums and corresponding portion of the common areas that remained unsold during the term of the policy.

The policy does contain a "DESCRIPTION OF PREMISES" which states that the building is a 14 unit apartment located at 1216 1st Ave. W. (Jacobowitz Decl., Ex. 1.) "Premises" is not a defined term in the policy. The "premises" at issue here, depending on the party consulted, consisted of either the entire building or the individual condominiums that HCLLC remodeled and then sold.

Webster's Third New International Dictionary contains the following definitions for "premises": "property that is conveyed by bequest or deed;" "a specified piece or tract of land with structures on it;" "a building, buildings, or part of a building covered by or within the stated terms of a policy (as of fire insurance);" and "the place of business of an enterprise or institution." These definitions make clear that the word "premises" may refer to separate portions of one building. Here, HCLLC converted the apartment building into condominiums that were to be sold and were in fact sold as separate units. In these circumstances, HCLLC's argument that the entire building had to be sold before the Alienated Property Exclusion applies is unavailing. The court determines that the

ORDER – 9

there is no genuine issue of material fact that the "premises" referred to in the policy are the condominium units that were remodeled and then sold on an individual basis. Therefore, Defendants' last hope for coverage is that the "premises" constitute their "work" and thus are not covered by the exclusion.

### 3. "Your work"

The Alienated Property Exclusion will not apply "if the premises are 'your work' and were never occupied, rented or held for rental by you." (Jacobowitz Decl., Ex. 1.) Here, Defendants do not dispute that HCLP transferred the property to HCLLC by quitclaim deed after it held the property for rental. HCLLC admits that after the transfer of the property from HCLP that it "owned and operated the Highland Court building as the Highland Court Apartments" and that it rented out apartments in that building prior to July 31, 2004 when all tenants vacated. (Strand Decl. ¶¶ 4-5.) It contends, however, that because the Underlying Lawsuit alleges "property damage" to the common areas of the building, and that it never expressly rented those areas when the property was managed as an apartment, that the Alienated Property Exclusion does not apply. The court is not persuaded by Defendants' argument that they did not "rent" the common areas (such as the interstitial spaces between walls) of the building when it was an apartment. By its very nature an apartment building is held for rental. The court determines that HCLP and then HCLLC "rented" and "held for rental" the "premises" where the "property damage" occurred. The court further determines that there is no genuine issue of material fact regarding whether the Alienated Property Exclusion applies to bar coverage for claims arising out of the ten condominiums sold before the end of the policy period and the common areas associated with those units.

ORDER – 10

### III. CONCLUSION

For the foregoing reasons, the court GRANTS Oregon Mutual's motion for summary judgment to the extent it seeks a declaration that coverage for "property damage" is excluded by the Owned Property and Alienated Property Exclusions. Because coverage is excluded for "property damage," to the extent the claims against the Defendants in the Underlying Lawsuit are based on "property damage," Oregon Mutual has no duty to defend the Defendants in the Underlying Lawsuit.[2] To the extent Oregon Mutual seeks a declaration that it has no duty to indemnify the Defendants, the court finds that it would be premature to make a determination on that issue and declines to rule on it.

DATED this 23rd day of March, 2009.

JAMES L. ROBART
United States District Judge

---

[2] Oregon Mutual also seeks a declaration that it may withdraw from defending the Defendants in the Underlying Lawsuit. Based on the record before it, the paucity of the briefing on claims other than "property damage" alleged in the Underlying Lawsuit as well as whether other policies issued by Oregon Mutual may cover the damage asserted, the court is not comfortable making such a blanket assertion.

ORDER – 11